**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JAMES GLENNON WHITWORTH, JR.,

                Plaintiff,

vs.                                   Case No. 6:17-cv-1482-Orl-18JRK

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

                Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

### **I. Status**

      James Glennon Whitworth, Jr. ("Plaintiff") is appealing the Commissioner of the Social

Security Administration's final decision denying his claim for disability insurance benefits

("DIB"). Plaintiff's alleged inability to work is a result of bipolar disorder, depression, "blood

pressure," and a heart condition. Transcript of Administrative Proceedings (Doc. No. 14; "Tr."

or "administrative transcript"), filed October 27, 2017, at 102, 116, 230 (emphasis and

capitalization omitted). On March 1, 2013, Plaintiff filed an application for DIB, alleging an

---

[1]      "Within 14 days after being served with a copy of [a report and recommendation on a
dispositive issue], a party may serve and file specific written objections to the proposed findings and
recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within
14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the
proposed findings and recommendations alters the scope of review by the District Judge and the United
States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to
which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir.
R. 3-1; Local Rule 6.02.

onset disability date of February 14, 2013. Tr. at 202-03.[2] Plaintiff's application was denied initially, see Tr. at 102-13, 114, 115, 135-39, and was denied upon reconsideration, see Tr. at 116-28, 129, 130, 143-47.[3]

On April 22, 2015, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 36-90. At the time of the hearing, Plaintiff was forty-six years old. Tr. at 43. The ALJ issued a Decision on June 26, 2015, finding Plaintiff not disabled through the date of the Decision. Tr. at 22-30.

The Appeals Council then received a Request for Review, a letter from Plaintiff's counsel, and a letter from Plaintiff. Tr. at 4, 5; see Tr. at 191-92 (Request for Review); Tr. at 318 (counsel's letter); Tr. at 317 (Plaintiff's letter).[4] On June 30, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On August 14, 2017, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises two issues: 1) "[w]hether the ALJ erred in determining that [Plaintiff] has the residual functional capacity [('RFC')] to perform light work with some additional limitations after failing to adequately consider and weigh all of the limitations and

---

[2]     Although actually completed on March 1, 2013, see Tr. at 202, the protective filing date of the DIB application is listed elsewhere in the administrative transcript as February 28, 2013, see Tr. at 102, 116.

[3]     Plaintiff also filed an application for DIB on January 9, 2009, Tr. at 195-96, which was denied initially, Tr. at 132-34. It does not appear from the administrative transcript that Plaintiff requested reconsideration of the initial denial. This application is not at issue here.

[4]     Plaintiff's letter inquired about the status of his administrative appeal. See Tr. at 317. Counsel's letter addressed the timeliness of the administrative appeal. See Tr. at 318.

opinions outlined by treating physicians and examining physicians"; and 2) whether the ALJ "properly relied on the testimony of the [VE] after posing and relying on a hypothetical question that did not adequately reflect the limitations of [Plaintiff]." Plaintiff's Brief Addressing the Merits of Appeal (Doc. No. 18; "Pl.'s Br."), filed December 29, 2017, at 8; see Pl.'s Br. at 8-15 (first issue), 15-18 (second issue). On February 27, 2018, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing the issues raised by Plaintiff. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

_____

[5]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 24-30. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 14, 2013, the alleged onset date." Tr. at 24 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: cardiovascular disease, diabetes mellitus, hypertension, hyperthyroidism, bipolar disorder, and generalized anxiety disorder." Tr. at 24 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 24 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) except he can occasionally climb ramps and stairs, but should never climb ladders, ropes, [or] scaffolds. [Plaintiff] should avoid being in proximity to moving mechanical parts and working in high exposed places. [Plaintiff] can understand and remember simple instructions and can perform simple, routine, and repetitive tasks. [Plaintiff] is limited to occasional interaction with the public and co-workers.

Tr. at 26 (emphasis omitted). At step four, the ALJ relied on the VE testimony and found that Plaintiff "is unable to perform any past relevant work." Tr. at 29 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("[forty-four] years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 29 (emphasis and citation omitted). Specifically, the ALJ found that Plaintiff could perform the following jobs: "sorter/grader"; "office helper"; and "dining room attendant." Tr.

at 30. The ALJ concluded that Plaintiff "has not been under a disability . . . from February 14, 2013, through the date of th[e D]ecision." Tr. at 30 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted, Plaintiff takes issue with the ALJ's weighing of the medical opinion evidence and with the ALJ's hypothetical to the VE. These issues, and the law applicable to each, are addressed in turn.

### A. Medical Opinions

#### 1. Parties' Arguments

In raising his first issue, Plaintiff specifically argues that the ALJ erred in assessing the opinions of Dr. Tiffany Schiffner[6] and the opinions expressed in the progress notes from Outlook Clinic.[7] See Pl.'s Br. at 10-11, 14-15. Plaintiff contends that, in weighing Dr. Schiffner's opinion, the ALJ was inaccurate when he stated that Dr. Schiffner opined Plaintiff has a "moderate limitation in functional ability" because Dr. Schiffner actually observed that Plaintiff's functional ability is "moderately-severely impaired." Id. at 10 (quoting Dr. Schiffner's opinion, Tr. at 465). Plaintiff argues that "the ALJ downplayed the functional limitations assessed by Dr. Schiffner or, at a minimum, failed to indicate appropriate reasoning for his finding [Plaintiff] to have less restrictive limitations in his functional ability." Id. As to the opinions expressed in the progress notes from Outlook Clinic, Plaintiff contends the ALJ erred in failing to note the weight given to these opinions. Id. at 11, 14. According to Plaintiff, "[t]he records from Outlook Clinic are extremely important because they show that [Plaintiff] continued to have significant psychiatric issues, even after receiving treatment for several

---

[6]     Dr. Schiffner is a licensed psychologist, who examined Plaintiff on April 23, 2013 at the request of the SSA. See Tr. at 463-66.

[7]     Plaintiff received mental health treatment at the Outlook Clinic. The administrative transcript contains a number of records and treatment notes from Outlook Clinic spanning December 6, 2013, see Tr. at 532, to March 12, 2015, see Tr. at 596-97. See generally Tr. at 502-34, 547-48, 551-54, 556-67, 572-92, 596-97, 600-04, 607-08.

months." Id. at 14. Because the ALJ did not indicate the weight afforded to these opinions, argues Plaintiff, "it is not clear how they were factored into the [RFC] determination of the ALJ." Id.

Responding, Defendant contends that "[t]he other medical evidence of record . . . supports the ALJ's decision to assign some weight to Dr. Schiffner's opinion." Def.'s Mem. at 7 (citation omitted). Defendant argues that "[w]here an ALJ makes a factual error, the error will be considered harmless if it is clear that the error did not affect the ALJ's ultimate determination." Id. at 7 n.3 (citation omitted). With regard to the progress notes from Outlook Clinic, Defendant argues that "the ALJ reviewed the medical evidence of record including Mr. [Kevin] Kearney's treatment notes." Id. at 10 (citation omitted).[8]

### 2. Applicable Law[9]

The Regulations establish a "hierarchy" among medical opinions[10] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area

---

[8]    Mr. Kearney is an advanced registered nurse practitioner, who works at Outlook Clinic and treated Plaintiff. See, e.g., Tr. at 547-48.

[9]    On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed his claims before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[10]    "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

of expertise than those of non-specialists." <u>McNamee v. Soc. Sec. Admin.</u>, 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); <u>see also</u> 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[11] the Regulations instruct ALJs how to properly weigh such a medical opinion. <u>See</u> 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. <u>Id.</u> When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). <u>Id.</u>

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate

---

[11]     A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. <u>See</u> 20 C.F.R. § 404.1502.

reasons showing "good cause" for discounting it. it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc.

Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

### 3. Opinion/ALJ's Findings/Analysis

As part of her evaluation of Plaintiff, Dr. Schiffner opined that Plaintiff's "[s]ocial functioning is severely impaired based on his report of a lack of close peer relationships." Tr. at 465. Dr. Schiffner also stated that Plaintiff's "[f]unctional ability is moderately-severely impaired based on his mental health symptomatology." Tr. at 465.

The ALJ gave "some weight" to Dr. Schiffner's opinions. Tr. at 28.[12] The ALJ rejected Dr. Schiffner's opinion that Plaintiff has severe limitations in social functioning and stated he accepted Dr. Schiffner's opinion that Plaintiff has a "moderate limitation in functional ability." Tr. at 28. Although this was an inaccurate description of Dr. Schiffner's opinion regarding Plaintiff's functional ability, this error is harmless given the conclusory nature of the doctor's opinion. See Tr. at 465. Even assuming that the ALJ rejected Dr. Schiffner's opinion that Plaintiff's functional ability is "moderately-severely impaired," and to the extent this opinion was based on Plaintiff's "mental health symptomatology," the ALJ found Plaintiff's reported symptoms inconsistent with the medical evidence, and this finding is supported by substantial evidence. Tr. at 27-28; see Tr. at 465 (Dr. Schiffner's opinion).

The ALJ made a number of observations in discrediting Plaintiff in terms of his reported mental health symptoms. First, the ALJ noted that Plaintiff's "mental evaluations . . . show normal attention and concentration, fair memory, fair judgment and insight, and average intelligence throughout 2013, 2014, [and] 2015." Tr. at 27 (citation

---

[12]    The ALJ did not refer to Dr. Schiffner by name, but he cited Exhibit 9F and summarized the opinions in the exhibit regarding Plaintiff's social functioning and functional ability. See Tr. at 28. Exhibit 9F contains the opinions of Dr. Schiffner. See Tr. at 463-66.

omitted); see, e.g., Tr. at 465 (Dr. Schiffner's April 2013 evaluation report indicating Plaintiff's "[a]ttention and concentration are normal," his "[i]ntelligence appears to be within the average range," his "judgment is fair," and his "insight is good"); Tr. at 553, 547 (Outlook Clinic progress notes from December 2014 and January 2015 indicating Plaintiff's insight and judgment are "intact," he has normal orientation and knowledge, and he is alert).

Second, the ALJ indicated that Plaintiff's "evaluation records . . . show [Plaintiff's] denials for depression and mania and statement[s] that his mood was improved overall." Tr. at 27. According to the ALJ, Plaintiff's treatment notes show that "his depression was resolved with improving mental progress and good response to psychiatric treatment." Tr. at 27 (citation omitted); see, e.g., Tr. at 468 (May 2013 progress note from Outlook Clinic indicating Plaintiff's "mood is more stable," "mood is doing well overall," and Plaintiff is "not getting episodes of depression or mania"); Tr. at 510 (March 2014 progress note from Outlook Clinic indicating Plaintiff's "mood [is] happy," and he is improving).

Third, the ALJ observed that Plaintiff's "most recent treatment records . . . show normal mental evaluations and improving mental response and progress, which are consistent with [Plaintiff's] report that he was doing very well with 'better' sleep, and overall stable mood." Tr. at 27-28 (citation omitted); see, e.g., Tr. at 600 (February 2015 treatment note from Outlook Clinic indicating Plaintiff is "stable"); Tr. at 547 (January 2015 treatment note from Outlook Clinic indicating Plaintiff's mood is stable); Tr. at 553 (December 2014 treatment note from Outlook Clinic indicating Plaintiff is "doing very well" "except for cases of situational anxiety," and his sleep and appetite are "good"); Tr. at 563 (August 2014 treatment note from Outlook Clinic indicating Plaintiff "overall feels mood stable"); Tr. at 543 (June 2014 progress note from the Trina Hidalgo Heart Care Center indicating Plaintiff's depression is "managed by Outlook [Clinic]" and is stable). Thus, the undersigned finds no

error in the ALJ's assessment of Dr. Schiffner's opinion regarding Plaintiff's limitations in functional ability.

Although the ALJ did not state the weight assigned to the progress notes from Outlook Clinic, the undersigned finds that the ALJ accepted the impressions and diagnoses contained in them. See Tr. at 27-28. Notably, the ALJ relied on these progress notes in finding that Plaintiff's mental evaluations are "normal," that his mood was improving, that he denied depression and mania, and that he has had a good response to psychiatric treatment. See Tr. at 27-28.[13] Upon review, it is clear that these progress notes are consistent with the ALJ's analysis and RFC finding. Accordingly, any error in the ALJ's failure to specifically assign weight to the opinions expressed in the progress notes is harmless. See, e.g., Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) (finding that "[a]lthough the ALJ did not explicitly state what weight he afforded the opinions of [four physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless").

## B. VE Hypothetical

### 1. Parties' Arguments

Plaintiff argues that although "[t]he ALJ posed a hypothetical to the [VE] with the same limitations" as those in the RFC, the hypothetical did not include Plaintiff's moderate limitations in social functioning and in concentration, persistence and pace that the ALJ found at step three of the sequential inquiry. Pl.'s Br. at 15-16.[14] Responding, Defendant

---

[13]    The ALJ does not refer to Outlook Clinic by name, but he cites exhibits that contain progress notes from Outlook Clinic.

[14]    Other than stating that the ALJ's hypothetical did not account for Plaintiff's moderate limitations in social functioning, Plaintiff does not address social functioning in any way. See Pl.'s Br. at 15-18. Plaintiff instead focuses on the ALJ's alleged failure to include the moderate limitations in

(continued...)

asserts that the Eleventh Circuit has "repeatedly concluded that limitations similar to the limitations found by the ALJ in Plaintiff's case sufficiently account for a rating[ ] of moderate difficulties in maintaining concentration, persistence, or pace." Def.'s Mem. at 15 (citations omitted).

### 2. Applicable Law

An ALJ poses a hypothetical question to a VE as part of his step-five determination of whether the claimant can obtain work in the national economy. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). When the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE. Brunson v. Astrue, 850 F. Supp. 2d 1293, 1303 (M.D. Fla. 2011) (quoting Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished)).

In determining an individual's RFC and later posing a hypothetical to a VE which includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)). "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Loveless v. Massanari, 136

---

[14](...continued)
concentration, persistence, and pace. See id.

F. Supp. 2d 1245, 1250 (M.D. Ala. 2001). While the hypothetical question must include all of a claimant's impairments, it need not include impairments properly rejected by the ALJ. See McSwain, 814 F.2d at 620 n.1. Moreover, "questions that 'implicitly account[ ] for the claimant's limitations' are sufficient to meet this requirement." Henry v. Comm'r, Soc. Sec. Admin., 802 F.3d 1264, 1269 (11th Cir. 2015) (quoting Winschel, 631 F.3d at 1180-81; see also Thornton v. Comm'r, Soc. Sec. Admin., 597 F. App'x 604, 612 (11th Cir. 2015).

In Thornton, "the ALJ determined that the evidence demonstrated that [the plaintiff] could engage in simple, non-detailed tasks, despite 'moderate' limitations in concentration, persistence, and pace." 597 F. App'x at 612. "The hypothetical the ALJ posed specified that the VE should assume that [the plaintiff] could only perform 'simple, non-detailed tasks.'" Id. Because substantial evidence supported that determination, the Court held that "the ALJ's hypothetical was not deficient because it did not specifically refer to [the plaintiff]'s limitations in maintaining concentration, persistence, and pace." Id.; see also Winschel, 631 F.3d at 1181 (recognizing that "[w]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations"); Dawson v. Comm'r of Soc. Sec., No. 6:11-cv-1128-Orl-28, 2012 WL 1624267 (M.D. Fla. May 9, 2012) (unpublished) (collecting cases which recognize that the inclusion of limitations such as work involving simple tasks and/or simple instructions properly accounts for moderate limitations in concentration, persistence, and pace).

### 3. Hypothetical/Analysis

At step three, the ALJ found that Plaintiff has "moderate difficulties" in concentration, persistence, and pace, as well as in social functioning. Tr. at 25. As noted above, the ALJ then determined that Plaintiff has the RFC to "understand and remember simple instructions" and perform "simple, routine, and repetitive tasks," but he would be "limited to occasional interaction with the public and co-workers." Tr. at 26. At the hearing, the ALJ incorporated these limitations in the hypothetical posed to the VE. See Tr. at 84.

The undersigned finds that the ALJ sufficiently accounted for Plaintiff's moderate limitations in concentration, persistence, and pace by limiting Plaintiff to simple instructions and to simple, routine, and repetitive tasks. In concluding that Plaintiff has moderate limitations in concentration, persistence, and pace, the ALJ observed that Plaintiff's "mental status exams show normal concentration and attention, which is consistent with [Plaintiff's] report that he manages a savings account and checkbook, watches movies during the day, and travel[s] . . . alone using public transportation." Tr. at 25 (citation omitted). The ALJ ultimately found that Plaintiff's "impairments . . . would not prevent [him] from performing work at the [RFC] on a regular and continuing basis," and that "[t]he RFC assessment is fully supported by the medical evidence of record." Tr. at 28. Substantial evidence supports the ALJ's determination that Plaintiff's impairments would not prevent him from performing work that involves following simple instructions and performing simple, routine, and repetitive tasks. See, e.g., Tr. at 465 (progress notes indicating Plaintiff has normal attention and concentration); Tr. at 547, 553, 596 (progress notes indicating Plaintiff has normal memory, orientation, and knowledge, and he is alert); Tr. at 281 (Function Report completed by Plaintiff indicating he travels alone, uses public transportation, manages a savings account,

and uses a checkbook). Therefore, the specific inclusion of "simple instructions" and "simple, routine, and repetitive tasks" properly accounted for Plaintiff's moderate limitations in concentration, persistence, and pace.

Finally, to the extent Plaintiff argues that the ALJ's hypothetical did not include Plaintiff's limitations in social functioning, see supra note 14, the undersigned finds that the ALJ accounted for Plaintiff's moderate limitations in social functioning by limiting Plaintiff to "occasional interaction with the public and co-workers." Tr. at 26; see, e.g., Washington v. Soc. Sec. Admin., Com'r, 503 F. App'x 881, 883 (11th Cir. 2013) (finding ALJ's hypothetical took account of the plaintiff's moderate limitations in social functioning by limiting the plaintiff to jobs that involved only occasional interaction with the general public and co-workers).

### V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**RECOMMENDED**:

1.      That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2.      That the Clerk be further directed to close the file.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on June 25, 2018.

James R. Klindt
**JAMES R. KLINDT**
United States Magistrate Judge

bhc
Copies to:

Honorable G. Kendall Sharp
Senior United States District Judge

Counsel of record

-16-